UNITED STATES of America, Plaintiff-Appellant,

v.

Henry E. PERRY et al., Defendants-Appellees.

No. 72-2143.

United States Court of Appeals, Fifth Circuit.

Jan. 8, 1973.

---

Wayman G. Sherrer, U. S. Atty., William D. Mallard, Jr., Asst. U. S. Atty., Birmingham, Ala., John M. Dowd, Tax Div., Scott P. Crampton, Asst. Atty. Gen., Ann E. Belanger, Meyer Rothwacks, Attys., Dept. of Justice, Washington, D. C., for plaintiff-appellant.

J. Gilmer Blackburn, Robert Straub, Decatur, Ga., for Perry.

William B. Eyster, Decatur, Ala., for Maryland Cas.

Before JOHN R. BROWN, Chief Judge and THORNBERRY and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge.

The Internal Revenue Service brought this action against the appellees to set aside the transfer of certain real property as fraudulent against the government and to impress and foreclose an equitable lien on the property. The District Court for the Northern District of Alabama dismissed the government's claim as barred by an earlier state court quiet title action under principles of res judicata. From that adverse decision, the Internal Revenue Service appeals.

## I.

Appellees-taxpayers, Henry and Annie Mae Perry, were charged by the government with failure to pay a total of approximately $84,000 in federal income tax for various years from 1959 to 1965. At the times that these liabilities accrued, Henry and Annie Mae Perry owned the piece of real property which was subject of the conveyance that the IRS now asserts to be fraudulent. In January, 1967, taxpayers Henry and Annie Mae entered a contract to transfer this real estate to Perrylanes, Inc., a corporation whose sole stockholders were the children of Henry and Annie Mae, in exchange for assumption of outstanding mortgages. When the actual deed delivery came on March 11, 1967, however, the property was transferred by warranty deed to the Perry children jointly, rather than to the corporation.

Between November, 1967, and March, 1968, the IRS assessed deficiencies against the Perrys totaling $84,617.83.

Notice of liens were filed by the government in the appropriate county offices on March 15 and June 11, 1968, pursuant to 26 U.S.C. § 6322.

In September, 1969, the corporation, Perrylanes, Inc., commenced a suit in the circuit court of Morgan County, Alabama, to reform the deed to show Perrylanes, not the children, as grantee, and to quiet title. Named defendants were the Perry children, the parties holding mortgages on the property, and the United States government. The United States was properly served with process, both in Alabama and in Washington, as required by federal law. The filed tax liens claimed by the United States were specifically set out in the complaint. The United States failed to make any appearance in this state court action [1] and never requested, as was its right, that the action be removed to federal district court. On September 15, 1970, a decree *pro confesso* was entered against the government, ostensibly freeing the property of all government claims.

On April 7, 1971, the IRS commenced this action to declare the transfer to Perrylanes to be fraudulent against the government and, void. The district court held that action was barred by res judicata.

## II.

In this appeal, the government alleges two grounds for reversal which are very closely connected. Both arguments rest on the acceptance of the government's view of the nature and origin of the lien it now seeks to enforce. The first argument is substantive. The second is procedural and highly technical.

The government argues that the notice of liens filed March and June, 1968, were against the taxpayers and not the property, and so at the time of the judgment of the Morgan County court the government had no claim on the property. The government maintains that these recorded liens are not the subject of the instant fraudulent conveyance action. Rather, the government asserts that the lien involved herein is a totally new equitable lien which did not, and indeed could not, come into existence until the instant suit was brought in 1971.

At the outset, it is necessary to understand the basis for the original suit to quiet title. Congress has expressly granted to appropriate state and federal courts the power to entertain suits of this type in 28 U.S.C. § 2410.[2] One of the purposes of this statute was "to provide a method to clear real estate titles of questionable or valueless liens." [3] It was in response to the recognized need for a way to force disputes over government tax liens to resolution, rather than leaving the United States in complete control of the timing. It is against this background that the effect of the quiet title proceeding attacked herein must be resolved.

Both the Alabama courts and this court construing Alabama law have rec-

1. The government expressed its reasons for not entering the quiet title action to the district court at the trial of this instant action in November, 1971, as shown by the district court's opinion. The attorneys for the government informed the district court that they had intended to file an answer in the quiet title suit but that through neglect or pure oversight on their part no appearance was ever made.

2. (a) Under the conditions prescribed in this section and section 1444 of this title for the protection of the United States, the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter—

(1) to quiet title to,
(2) to foreclose a mortgage or other lien upon,
(3) to petition,
(4) to condemn, or
(5) of interpleader or in the nature of interpleader with respect to, real or personal property on which the United States has or claims a mortgage or other lien.

3. H.R.Rep.No.1191, 77th Cong., 1st Sess. (1941) ; S.Rep.No.1646, 77th Cong., 2nd Sess. (1942) ; *See* Quinn v. Hook, 231 F.Supp. 718 (E.D.Pa., 1964) ; *See also*, United States v. Brosnan, 363 U.S. 237, 242–250, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960).

ognized that quiet title actions in Alabama are designed to end *all* doubts about title to land as far as all persons given notice of the suit are concerned. The Alabama Supreme Court has stated:

> The primary purpose of . . . [the quiet title action] is to enable a party who is in the peaceable possession of land, and who, for this reason, cannot maintain an action at law, to compel a party who claims a right, title, or interest in the land, or who is ever reputed to so claim, to come into a court of equity and propound and show the nature, character, and kind of his title, claim, and demand, and to have it determined, and to have the court to decree and adjudge whether it is good or bad. Wylie v. Lewis, 263 Ala. 522, 83 So.2d 346, 347 (1955).

This court has recently recognized this as Alabama law:

> By the Alabama statutes which control quieting title and determination of claims to land, the Circuit Court decrees ". . . clear up *all* doubts or disputes concerning [the land]." Anderson v. Moorer, 372 F.2d 747, 751 (5th Cir. 1967).

■ Thus it is clear that quiet title actions are intended to be as final and reliable as possible.

■ The government now takes the position that while quiet title suits may be designed to settle *all* claims, the government's instant claim was not in existence at the time of the quiet title suit and that the government was not bound to litigate it. We reject this position in order to preserve the integrity of the quiet title action and to give full effect to what Congress must have intended in 28 U.S.C. § 2410.

There can be no doubt that the government was fully aware of these transactions in 1969 when the quiet title suit was brought. The Service had been feuding with the Perrys, both in court and out, for several years. The question is whether the government, a creditor of those who transferred land, is required to come in and assert any claim of fraudulent conveyance in any action brought by a third-party transferee to quiet title to the land. In the instant case, where all the necessary facts are known to the government at the time of the quiet title action, we find that it was obligated to assert its claim of a fraudulent conveyance at that time and failure to do so subjects the government to res judicata.

■ Under Alabama law, as this court has recognized, all matters are to be settled in quiet title actions, *including matters available for presentation but not presented:*

> . . . the Alabama state courts would not allow relitigation either of issues raised in the prior suits or of issues which could have been raised in those suits. By the Alabama statutes which control quieting title and determination of claims to land, the Circuit Court decrees ". . . clear up *all* doubts or disputes concerning [the land]." Alabama Code, Title 7, §§ 1109, 1116 (Recomp.1958). [emphasis added] Warrior River Coal & Land Co. v. Alabama State Land Co., 1907, 154 Ala. 135, 45 So. 53. See Cheney v. Nathan, 1896, 110 Ala. 254, 20 So. 99. The decrees are also ". . . binding and conclusive upon all the parties . . ." in the suit. Alabama Code, Title 7, §§ 1112, 1126 (Recomp.1958).

> The Alabama Supreme Court has, further, embraced for all cases (not merely for quiet title actions) the federal rule that ". . . res judicata must be pleaded as a bar, not only as respects matters actually presented to sustain or defeat the right asserted in the earlier proceeding, 'but also as respects any other available matter which might have been presented to that end.' " 25 So.2d 515.

[Citations omitted.]

Plaintiff has asserted no legal basis for lifting the bar of res judicata. That bar is neither sinister nor harsh; often it is salutary and, occasionally, merciful. Anderson v. Moor-

er, 372 F.2d 747, 751–752 (5th Cir. 1967).

Here it is very clear that any claim of the United States would go to the heart of a quiet title action. The claim of fraudulent conveyance, known and available to the government at the time of the quiet title suit, would be of prime importance in achieving the end for which the quiet title suit exists.

We note that in other cases where, under similar facts, the government has been joined in a quiet title action, the Service has been quick to come in and assert its fraudulent conveyance claim. In Zeddies v. United States, 7th Cir., 1966, 357 F.2d 897, the taxpayer had conveyed property to his daughter prior to the recording by the government of liens against the taxpayer. After the daughter brought a state court quiet title action, the government both filed an action alleging a fraudulent conveyance in federal court and had the state action removed. These cases were consolidated in federal court. In Smith v. United States, 6th Cir., 1958, 254 F.2d 865, the taxpayer husband conveyed property to his wife two years before a tax lien was filed. The United States filed an action to perfect its lien against the wife in district court. Prior to this filing, however, the wife had instituted quiet title proceedings in state court. The Court of Appeals held that the government, by not seeking removal, had chosen to litigate the matter in state court and that

the district court action should be stayed pending resolution in the state courts. These cases suggest to this court that the quiet title action indeed covers the resolution of fraudulent conveyance claims and that the government has seemingly recognized this principle by asserting its fraud claims in those cases.[4]

Therefore, it appears to this court that the government has no viable argument that res judicata is improper because the issues involved in quiet title and fraudulent conveyances are so different. It seems to us that the quiet title action is an overall umbrella type proceeding which includes, as a constituent part necessary to preserve the integrity of the quiet title action, the resolution of available fraudulent conveyance claims.

█ The government's highly technical second claim is an assertion that the earlier proceeding cannot bind it because notice of the lien claimed was not alleged with specificity as required by 28 U.S.C. § 2410(b).[5] In the quiet title suit, plaintiff Perrylanes set out the name of the taxpayers, the land involved, the identity of the local IRS office handling the Perrys' problems and the location and page of the lien notices which had been filed by the government. In short, the plaintiff gave just about all the information which it could. The government maintains that to comply with the statute, the plaintiff in a quiet title suit, to avoid a later fraudulent

---

4. This conclusion as to the government's usual practice is reinforced by the government attorney's statement to the district court. See footnote 1 supra.

5. (b) The complaint or pleading shall set forth with particularity the nature of the interest or lien of the United States. In actions or suits involving liens arising under the internal revenue laws, the complaint or pleading shall include the name and address of the taxpayer whose liability created the lien and, if a notice of the tax lien was filed, the identity of the internal revenue office which filed the notice, and the date and place such notice of lien was filed. In actions in the State courts service upon the United States shall

be made by serving the process of the court with a copy of the complaint upon the United States attorney for the district in which the action is brought or upon an assistant United States attorney or clerical employee designated by the United States attorney in writing filed with the clerk of the court in which the action is brought and by sending copies of the process and complaint, by registered mail, or by certified mail, to the Attorney General of the United States at Washington, District of Columbia. In such actions the United States may appear and answer, plead or demur within sixty days after such service or such further time as the court may allow.

conveyance action by the government, would have to allege that the United States *might* claim the transaction was fraudulent and specifically give notice, not just as to the land transaction, and taxpayers, but also hypothesize what the government might later wish to assert. The government admits that this would never be done if it is indeed possible to describe the contingency. Furthermore, the government argues that even if such an allegation were made, it would seek dismissal on that issue arguing that there could never be a fraudulent conveyance issue until the government filed such a suit at its own pleasure. In short, the government says that there is no way for any party by any action to avoid the possibility that the government will later bring suit claiming a fraudulent conveyance. We do not feel that this position should be sustained. To allow this interpretation to be given the statute would infringe the intent of Congress and prohibit full usage of a valuable tool—the quiet title action—for conclusively settling all claims to land.

The specificity provisions are in the statute to ensure that the government is given full notice of what claims the parties are talking about and what land and parties are involved. Here the taxpayers whose problems gave rise to the assessments were identified, the fact of a transaction involving a specific piece of land and the identity of the transferee were disclosed. The government had specific notice to come in and litigate

about this piece of property. There could be no mistake about the material issues; there was no bad faith or attempt to "fool" the government. Congress wanted to ensure that "hidden" liens were not removed without notice to the government; it never indicated that the government could not be required to litigate all claims growing out of the specific liens, property, and taxpayers clearly identified to the Service.

Congress sought to provide, through the basic enactment of § 2410, a method to force the government to litigate tax liens to enable persons, both taxpayers and third parties, to clear title and have uncertainty conclusively removed so they could take certain actions without fear of later challenge. To allow the government to always hold back one possible defect will never fulfill the goal of conclusively settling these disputes.[6] It is well-known that the administration process, even in the IRS, is often slow and unresponsive. To offset this and to prevent the obvious harm which can come from administrative harassment, Congress provided a method to settle the issue.

We do not feel that any undue burden is put on the government by requiring it to assert any fraudulent conveyance claim in a quiet title action. First, it is given notice that a transfer has occurred, the terms of the transfer, the identities of the parties involved and the nature of the tax difficulties involved. The government has an absolute right of

---

6. We note that the government argues that no real harm to the integrity of the quiet title action can come in these cases since it concedes that any *bona fide* purchaser taking from the one who obtains the bill to quiet title before the government files a fraudulent conveyance action will be protected. This overlooks the very real possibility that the transferee who seeks a bill to quiet title may be doing so as a prelude to making substantial investment and/or improvements in the property in reliance on that bill. Once such a party had made substantial investments he might be tempted to settle even an essentially groundless fraudulent conveyance claim to protect a far greater investment.

Furthermore, allowing the government to stand on the sidelines and wait, in a sense does nothing more than create the possibility of further litigation, for even where the one obtaining the bill to quiet title has sold the property, in addition to the question of a possible fraudulent conveyance, the government might see fit to litigate whether the second sale was to a *bona fide* purchaser. It seems far better, when the government knows full well of all claims it might have, to require it to litigate these claims in the quiet title action and thus try to nip these later problems in the bud.

removal to federal court. The complaint itself and the information it contains is enough to give the IRS ample information for deciding whether a fraudulent conveyance claim may lie. The values sought to be established in the quiet title action sufficiently outweigh any administrative convenience since in reality the only chance of harm to the government comes from negligence or inattention on the government's part. The notice given herein was all that realistically could be given and was, under the circumstances, sufficient to comply with statutory requirements.

Furthermore, our reading of 28 U.S.C. § 2410 does not lead us to believe that Congress intended the IRS to escape an adjudication which would be an adequate bar to a private litigant. Here, as we have already discussed, we feel the courts of Alabama would find a creditor with knowledge and notice equal to that of the government in this case to be barred from relitigating this title in a future suit. The IRS knew all aspects of this transaction at all material times and were of necessity given notice by the elements in the quiet title complaint. The government now raises for the first time, in this appeal, that sufficient notice was not given. For the reasons stated, we choose to reject the highly technical argument of the government and opt for preserving the integrity of the quiet title action as a method specifically provided by Congress for forcing these matters to a speedy and just conclusion.

We therefore hold that the fraudulent conveyance action was barred by res judicata and the decision of the district court is

Affirmed.

JOHN R. BROWN, Chief Judge (concurring).

I concur fully in the decision and opinion of the Court. I add this only to clear up to the reader what might otherwise be a mystery: Why did this happen? Was the Government deliberately declining to participate in the Alabama quiet title action because of any genuine belief that § 2410 did not cover its potential claim? The answer is a plain no.

Indeed the only difficulty in this case is trying to articulate the Government's thesis. The fact is, as the arguments revealed, this is a plain case of gross, glaring neglect in which the Attorney General's Office and that of the local United States Attorney's Office to each of whom the appropriate citations were twice sent, simply sat by and did nothing.

The Government does a disservice to the laudable Congressional concept expressed in § 2410 by seeking a Judicial pardon on these dubious grounds for neglect of a kind for which they neither offer or can find an excuse.