SUSAN B. ELIAS, TRANSFEREE, ET AL.,[1] PETITIONERS
v. COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket Nos. 706–92, 707–92,      Filed June 8, 1993.
708–92, 709–92,
710–92, 711–92.

*Frederick J. Czerwionka,* for petitioners.
*John Q. Walsh,* for respondent.

## OPINION

RUWE, *Judge:* This matter is before the Court on petitioners' motion for summary judgment filed pursuant to Rule 121.[2] Petitioners seek summary judgment against respondent's determination of transferee liability against each petitioner in the amount of $63,817 for unpaid 1986 and 1987 income taxes and additions to tax due from petitioners' parents, Basil C. Elias and Sarah A. Elias. Petitioners resided in Illinois when they filed their petitions.[3]

---

[1] Cases of the following petitioners are consolidated herewith: William C. Elias, Transferee, docket No. 707–92; James T. Elias, Transferee, docket No. 708–92; Renee T. Vogt, f.k.a. Renee T. Elias, Transferee, docket No. 709–92; John L. Elias, Transferee, docket No. 710–92; and Lynn M. Elias, Transferee, docket No. 711–92.

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the period of time in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[3] At the time their petitions were filed, petitioners in the consolidated cases resided as follows: Susan B. Elias in Glen Ellyn, Illinois; William C. Elias in Chicago, Illinois; James T. Elias in Orland Park, Illinois; Renee T. Vogt in Lombard, Illinois; John L. Elias in Glen Ellyn, Illinois; and Lynn M. Elias in Lombard, Illinois.

## Background[4]

In 1981, respondent initiated an examination of Basil C. and Sarah A. Elias' 1978 Federal income tax return. On September 4, 1981, respondent gave both telephone and written notice of this examination to Basil C. and Sarah A. Elias (hereinafter referred to as Mr. and Mrs. Elias or transferors).

In 1983, Mr. and Mrs. Elias purchased real estate at 2945 Maros Lane, Olympia Fields, Illinois (the Maros Lane property), where they took up residence. On April 28, 1983, Mr. and Mrs. Elias placed the property in an Illinois land trust for the benefit of their children; i.e., petitioners. Pursuant to the terms of the trust instrument, Mr. Elias retained power of direction over the Maros Lane property. The trust instrument provided that the trustee was not required to inquire into the propriety of any such direction. Mr. Elias' power of direction could be revoked and redesignated only by the written agreement of all the beneficiaries of the trust. After it was placed in trust, Mr. and Mrs. Elias continued to reside on the property (until it was sold in 1989) and continued to pay mortgage and utility bills.

In October 1983, a grand jury was convened to investigate Mr. Elias. On October 9, 1985, Mr. Elias was indicted under section 7206(1) for filing false Federal income tax returns for taxable years 1978 and 1979. A superseding five-count indictment charging violations of section 7206(1) for taxable years 1978 through 1981 was filed on January 8, 1986.

On April 2, 1986, the trust containing the Maros Lane property was amended to designate Renee Elias, rather than Mr. Elias, as the person holding the power of direction.

On October 15, 1986, Mr. and Mrs. Elias filed their 1985 Federal income tax return. Based on that return, respondent, on December 1, 1986, assessed Mr. and Mrs. Elias for tax, additions to tax, and interest as follows:

| | Additions to tax | | |
| --- | --- | --- | --- |
| Tax | Sec. 6651(a)(2) | Sec. 6654 | Interest |
| $103,143 | $3,381.72 | $44 | $5,188.65 |

[4]The relevant facts were taken from uncontested statements in the pleadings. motions and responses, and affidavits presented by the parties.

As of April 1987, Mr. and Mrs. Elias had made payments totaling only $33,600. Respondent filed a lien for Mr. and Mrs. Elias' unpaid 1985 taxes against the Maros Lane property with the Registrar of Titles, Cook County, Illinois, on April 29, 1987, in the amount of $78,157.37.[5] On May 6, 1987, Mr. Elias pled guilty to willfully filing false income tax returns for the 1978 and 1981 tax years. On May 7, 1987, respondent again filed a lien against the Maros Lane property in the amount of $78,157.37.

On October 15, 1987, Mr. and Mrs. Elias filed their 1986 Federal income tax return. On November 16, 1987, pursuant to their return, respondent assessed Mr. and Mrs. Elias for income tax, additions to tax, and interest for taxable year 1986 as follows:

*Additions to tax*

| Tax | Sec. 6651(a)(2) | Sec. 6654 | Interest |
|-----|-----------------|-----------|----------|
| $237,547 | $9,501.88 | $6,238 | $13,254 |

Respondent filed a lien for these assessments against the Maros Lane property in the amount of $266,554.88 on November 16, 1987.[6] No part of the assessed income tax, additions to tax, or interest due from the transferors for the taxable year 1986 has been paid. On or about February 8, 1988, respondent served a notice of levy with respect to Mr. and Mrs. Elias' unpaid taxes and additions thereto for 1985 and 1986 upon the trustee of the trust holding the Maros Lane property.

On May 19, 1988, petitioners brought an action in the Circuit Court of Cook County, Illinois, to quiet title to the Maros Lane property. Petitioners named as defendants the registrar of titles of Cook County, Illinois, and the U.S. Internal Revenue Service. The complaint describes the subject property; alleges that liens have been filed against it (the lien information is limited to date, amount, and identifying number); and alleges that Mr. and Mrs. Elias have no ownership interest in the land trust. There is no reference in the complaint to taxes except for the fact that the Internal Revenue Service is named in the caption. On June 13, 1988, petitioners had

---

[5] To date. the transferors have paid only $59,948.09 with respect to their 1985 tax liabilities.

[6] The amount of the lien reflects additional fees and costs of $14.

a summons and complaint served upon the registrar and upon the office of the Internal Revenue Service in Chicago, Illinois. On October 27, 1988, the Circuit Court of Cook County entered an order of default against the Internal Revenue Service for failing to appear or answer and held that its liens and levy were without force and effect.

On October 17, 1988, Mr. and Mrs. Elias filed their 1987 Federal income tax return. On November 28, 1988, pursuant to this return, respondent assessed income tax, additions to tax, and interest for the taxable year 1987 as follows:

| | *Additions to tax* | | |
|---|---|---|---|
| *Tax* | *Sec. 6651(a)(2)* | *Sec. 6654* | *Interest* |
| $70,719 | $2,811 | $3,705 | $4,617 |

Except for payment in the amount of $435, no part of the assessed income tax, additions to tax, or interest due from the transferors for the taxable year 1987 has been paid.

Mr. and Mrs. Elias resided on the Maros Lane property until it was sold in 1989. The proceeds from the sale of the Maros Lane property were distributed to petitioners. On September 21, 1990, respondent issued a notice of deficiency to the transferors for the taxable year 1986 in the amount of $183,569 plus additions to tax and interest.

Respondent determined that by reason of the transfer of the Maros Lane property, petitioners are liable as transferees for the tax liabilities of Mr. and Mrs. Elias. On October 16, 1991, respondent sent each petitioner a notice of transferee liability in the amount of $63,817 for Mr. and Mrs. Elias' 1986 and 1987 tax liabilities. The amount of transferee liability determined with respect to each petitioner is one-sixth of the value of the transferred interest in the Maros Lane property, which respondent determined to be $382,902, based upon a property value of $771,006 subject to a mortgage of $388,104. On January 9, 1992, petitioners filed petitions for redetermination. Respondent filed an answer on March 13, 1992. Petitioners' replies were filed on April 23, 1992.

On October 1, 1992, petitioners filed a motion for summary judgment. A hearing on petitioners' motion was held in Chicago, Illinois, on December 7, 1992.

## Discussion

Petitioners seek summary judgment. A decision on the merits of the parties' claims may be made on summary judgment if there is no genuine issue as to any material fact and a decision may be rendered as a matter of law. Rule 121(b). The Court will not resolve disputes over factual issues in a summary judgment proceeding. *Naftel v. Commissioner,* 85 T.C. 527, 529 (1985); *Espinoza v. Commissioner,* 78 T.C. 412, 416 (1982).

The effect of granting a motion for summary judgment is to decide the case against a party without allowing that party an opportunity for trial. The burden of proof rests with the moving party, here petitioners, to show that there is no dispute about any material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158-159 (1970). The facts will be viewed in the light most favorable to the party opposing the motion for summary judgment. *Naftel v. Commissioner, supra.*

Petitioners' first argument is that by virtue of the quiet title action they brought against the Internal Revenue Service, the issue of transferee liability is res judicata. Under the doctrine of res judicata, once a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are bound as to each matter that sustained or defeated the claim and as to any other admissible matter that could have been offered for that purpose. *Commissioner v. Sunnen,* 333 U.S. 591, 597 (1948).

A proceeding against property in which the United States has an interest is a suit against the United States. *Minnesota v. United States,* 305 U.S. 382, 386 (1939). "It long has been established, of course, that the United States, as sovereign, 'is immune from suit save as it consents to be sued * * * and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Testan,* 424 U.S. 392, 399 (1976) (quoting *United States v. Sherwood,* 312 U.S. 584, 586 (1941)). Waivers of sovereign immunity must be narrowly read, *Garcia v. United States,* 776 F.2d 116, 118 (5th Cir. 1985), and in construing such waiver, we are not at liberty to extend or narrow the waiver beyond what Congress intended, *Houston v. USPS,* 823 F.2d 896, 898 (5th Cir. 1987).

The Government has waived sovereign immunity with respect to quiet title actions in State courts in 28 U.S.C. sec. 2410(a) (1988), as follows:

(a) *Under the conditions prescribed in this section* and section 1444 of this title for the protection of the United States, the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter—
 (1) to quiet title to,
 (2) to foreclose a mortgage or other lien upon,
 (3) to partition,
 (4) to condemn, or
 (5) of interpleader or in the nature of interpleader with respect to,
real or personal property on which the United States has or claims a mortgage or other lien.
 [Emphasis supplied.]

The conditions under which the Government consents to be named a party are set out in 28 U.S.C. sec. 2410(b), as follows:

(b) The complaint or pleading shall set forth with particularity the nature of the interest or lien of the United States. In actions or suits involving liens arising under the internal revenue laws, the complaint or pleading shall include the name and address of the taxpayer whose liability created the lien and, if a notice of the tax lien was filed, the identity of the internal revenue office which filed the notice, and the date and place such notice of lien was filed. In actions in the State courts service upon the United States shall be made by serving the process of the court with a copy of the complaint upon the United States attorney for the district in which the action is brought or upon an assistant United States attorney or clerical employee designated by the United States attorney in writing filed with the clerk of the court in which the action is brought and by sending copies of the process and complaint, by registered mail, or by certified mail, to the Attorney General of the United States at Washington, District of Columbia.[7] * * *

Petitioners' State court suit failed to meet several of the conditions required by 28 U.S.C. sec. 2410(b). See *United States v. Perry,* 473 F.2d 643, 645 (5th Cir. 1973). Neither the U.S. Attorney for the Northern District of Illinois, nor the U.S. Attorney General in Washington, D.C., was served with the summons and complaint. Additionally, petitioners' complaint failed to identify the lien as a tax lien of the United States, the address of the taxpayer, or the identity of

---

[7] The rules regarding service of process in this type of proceeding are identical to those prescribed in Fed. R. Civ. P. 4(d)(4).

the Internal Revenue office which filed the tax lien. Respondent contends that petitioners' failure to comply with 28 U.S.C. sec. 2410(b) necessitates a finding that the quiet title action was ineffective to defeat respondent's lien as well as respondent's determination of transferee liability.

Petitioners cite *United States v. Dansby,* 509 F. Supp. 188 (N.D. Ohio 1981), in which the District Court held that by consenting to be sued in matters involving foreclosure on property on which the United States has a lien, the United States has required neither that it be named a party in all such suits nor that service be effectuated in the manner described in 28 U.S.C. sec. 2410(b). *Id.* at 197. In *United States v. Dansby, supra* at 196-197, the District Court relied on the Supreme Court's decision in *United States v. Brosnan,* 363 U.S. 237 (1960). The District Court construed the Supreme Court's holding in *Brosnan* to be that 28 U.S.C. sec. 2410 was "merely a consent to be sued and not a statement of the mandatory procedures to be followed in commencing such suits." *United States v. Dansby, supra* at 197.[8]

At issue in *Brosnan* was whether junior Federal liens on real properties were effectively extinguished by State proceedings to which the United States was not a party, and under State law, was not required to be a party. *United States v. Brosnan, supra* at 238-239. The two proceedings under consideration were a sale of property in California by a senior lienholder pursuant to a power of sale contained in the mortgage instrument and a sheriff's sale of Pennsylvania land pursuant to an in personam judgment against the mort-

---

[8] In *United States v. Dansby,* 509 F. Supp. 188 (N.D. Ohio 1981), the District Court held that a State foreclosure proceeding to enforce a State tax lien was effective to extinguish a choate Federal consensual lien which was prior in time. The Federal lien arose as a result of Mr. Dansby's default on a loan from the U.S. Farmers Home Administration which was secured by a mortgage deed. *Id.* at 189. The State tax lien arose by operation of State law due to delinquent county real estate taxes. *Id.* Under Ohio law, the State tax lien was deemed senior to the Federal lien and all other encumbrances. *Id.* at 190.

By contrast, the lien in the instant case does not originate in a consensual borrowing transaction, but arises from tax liability. This distinction was noted in the District Court's opinion.

The expeditious collection of tax revenues is paramount to the continued existence and vitality of government. The same cannot be said for federal loan programs that are in the nature of government largess and in fact are made possible by an effective tax collection system. * * * [*Id.* at 194.]

The District Court continued:

Thus, there is less need here than in the tax lien area to invoke protective measures against defaulting debtors in a manner disruptive of existing credit markets. [*Id.* (quoting *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 734-735 (1979)).]

gagor under a confession-of-judgment provision in the mortgage bond. *Id.* at 239. The Government argued that Congress provided the exclusive means for extinguishing Government liens when it enacted section 7424 of the Internal Revenue Code and 28 U.S.C. sec. 2410. *Id.* at 242, 247. The Supreme Court held that Congress, in enacting these sections, did not intend to exclude all State procedures for extinguishing junior liens. *Id.* at 250. The Court considered whether the proceedings at issue were, nevertheless, ineffective as they constituted unconsented suits against the United States. *Id.* at 250-251. Since the California sale involved no judicial proceeding, the Court held that the doctrine of sovereign immunity did not apply, and while the Pennsylvania procedure was technically a "judicial sale", the Court declined to extend the principle of sovereign immunity to such a situation. *Id.* Having found that neither proceeding was affected by sovereign immunity, the Supreme Court in *Brosnan* never addressed whether a litigant must comply with the conditions of 28 U.S.C. sec. 2410(b) when he names the United States in a suit brought under 28 U.S.C. sec. 2410(a). "[T]he Supreme Court did not rest its *Brosnan* holding on any aspect of section 2410." *United States v. Capobianco,* 836 F.2d 808, 815 (3d Cir. 1988).

Six years after the *Brosnan* decision, Congress passed the Federal Tax Lien Act of 1966, Pub. L. 89-719, sec. 109, 80 Stat. 1125, which added new provisions to section 7425 of the Internal Revenue Code.

Section 7425(a) provides:

SEC. 7425(a). JUDICIAL PROCEEDINGS.—If the United States is not joined as a party, a judgment in any civil action or suit described in subsection (a) of section 2410 of title 28 of the United States Code, or a judicial sale pursuant to such a judgment, with respect to property on which the United States has or claims a lien under the provisions of this title—

(1) shall be made subject to and without disturbing the lien of the United States, if notice of such lien has been filed in the place provided by law for such filing at the time such action or suit is commenced, or

(2) shall have the same effect with respect to the discharge or divestment of such lien of the United States as may be provided with respect to such matters by the local law of the place where such property is situated, if no notice of such lien has been filed in the place provided by law for such filing at the time such action or suit is commenced or if the law makes no provision for such filing.

If a judicial sale of property pursuant to a judgment in any civil action or suit to which the United States is not a party discharges a lien of the United States arising under the provisions of this title, the United States may claim, with the same priority as its lien had against the property sold, the proceeds (exclusive of costs) of such sale at any time before the distribution of such proceeds is ordered.

The legislative history of that section indicates that its enactment was a reaction to the Supreme Court's decision in *Brosnan*. *United States v. Capobianco, supra* at 815. The Senate Finance Committee report states in pertinent part:

Under present law, a junior Federal tax lien may be discharged on foreclosure of a senior security interest. Such foreclosure may occur in a plenary judicial action, or, under the law of some States, by nonjudicial foreclosure pursuant to a power of sale contained in the senior security instrument. In addition, in some States, foreclosure of a senior security interest may be accomplished by sale of the property by a judicial officer pursuant to a judgment entered under a "confession of judgment" signed by the debtor (typically in the security interest instrument itself). Where State law so provides, a junior Federal tax lien may be extinguished without the United States either being made a party to the proceeding or having any actual notice. As a result, under current law tax liens are sometimes extinguished without the United States having actual notice of the proceedings, under circumstances where it is not possible for the Internal Revenue Service to take steps to protect the United States in the collection of its tax revenues.

\*   \*   \*   \*   \*   \*   \*

As explained below, the bill adds a new provision to the internal revenue laws requiring the Government to be made a party in a plenary proceeding to discharge a tax lien. The bill also makes provision for a timely notice to the Government where it has the status of a junior lienor and there is no plenary proceeding.

[S. Rept. 1708, 89th Cong., 2d Sess. (1966), 1966-2 C.B. 876, 895.]

The instant case is controlled by subsection (a)(1) of section 7425. Section 301.7425-1(c)(1), Proced. & Admin. Regs., provides that if the United States is improperly named as a party to a judicial proceeding of a kind described in 28 U.S.C. sec. 2410(a), the effect is the same as if the United States were not joined. Even if the holding in *Brosnan* otherwise would have been applicable to the facts of the instant case, the changes to section 7425 have negated the effect of *Brosnan*. *United States v. Capobianco, supra* at 815. While petitioners attempted to join the United States as a party to the quiet title action, such attempt fell far short of what is

required under 28 U.S.C. sec. 2410(b). Therefore, as a result of petitioners' failure to comply with the provisions of 28 U.S.C. sec. 2410(b)—which prescribes the conditions under which the United States has consented to be sued—petitioners' quiet title action as it pertains to the United States is barred by sovereign immunity. *United States v. McNeil,* 661 F. Supp. 28, 30 (E.D. Ky. 1987); *In re Morrell,* 69 Bankr. 147 (N.D. Cal. 1986); see *United States v. Del Valle & Del Valle, Inc.,* 532 F. Supp. 337 (D.P.R. 1981); *United States v. Fernandez,* 49 AFTR 2d 82-1330, 82-1 USTC par. 9212 (D.P.R. 1981). The United States was never a party to the quiet title action, and it was not subject to the jurisdiction of the Cook County Circuit Court.[9] Consequently, the quiet title judgment is not binding on respondent in any respect.[10]

Petitioners next argue that they are entitled to summary judgment because the transfer occurred before the tax liabilities in question arose. Petitioners contend that "transferee liability" arises only if the transfer occurs after the transferors' unpaid taxes accrue. See *Gumm v. Commissioner,* 93 T.C. 475, 479 (1989), affd. without published opinion 933 F.2d 1014 (9th Cir. 1991). Petitioners maintain that the transfer in issue took place in 1983, and the tax liabilities at issue are for 1986 and 1987.

Section 6901(a) provides a procedure through which respondent may collect unpaid taxes from a transferee of assets if a basis exists under State law for holding the transferee liable. *Commissioner v. Stern,* 357 U.S. 39, 42-47 (1958); *Berliant v. Commissioner,* 729 F.2d 496, 499 (7th Cir.

---

[9] Respondent argues that even if the Cook County Circuit Court had jurisdiction to enter judgment against respondent, the quiet title judgment would not preclude assertion of transferee liability as that is an issue that properly cannot be raised in such an action. Because we hold the Circuit Court had no jurisdiction over the United States, we need not address this.

[10] The same result appears to be required under sec. 7426 by virtue of respondent's levy upon the Maros Lane property. Sec. 7426(a)(1) provides:

SEC. 7426(a). ACTIONS PERMITTED.—

(1) WRONGFUL LEVY.—If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States. Such action may be brought without regard to whether such property has been surrendered to or sold by the Secretary.

It has been held that a wrongful levy action in Federal District Court under sec. 7426 is the exclusive remedy for a third party whose property has been levied upon by the Internal Revenue Service. See *Winebrenner v. United States,* 924 F.2d 851 (9th Cir. 1991), and cases cited therein. Neither party has addressed this argument, and in light of our holding, we do not decide the question here.

1984), affg. *Magill v. Commissioner,* T.C. Memo. 1982-148; *Hagaman v. Commissioner,* 100 T.C. 180, 183 (1993); *Dillman v. Commissioner,* 64 T.C. 797, 800 (1975). Typically, the elements of transferee liability in a given State will be embodied in that State's fraudulent conveyances law. *Hagaman v. Commissioner, supra* at 184. Transferee liability in Illinois may be established under its Fraudulent Conveyance Act (Ill. Ann. Stat. ch. 59, par. 4 (Smith-Hurd 1989)),[11] which provides:

Every gift, grant, conveyance, assignment or transfer of, or charge upon any estate, real or personal * * * made with intent to disturb, delay, hinder or defraud creditors or other persons * * * shall be void as against such creditors, purchasers and other persons.[12]

Fraudulent conveyances fall into two categories, those which are fraudulent in fact and those which are fraudulent in law. *Gendron v. Chicago & N.W. Transp. Co.,* 139 Ill. 2d 422, 564 N.E.2d 1207, 1214 (1990). In fraud-in-fact cases, a specific intent to "disturb, delay, hinder or defraud" must be proved. *Id.* In fraud-in-law cases, on the other hand, intent is immaterial and a conveyance may be presumed fraudulent based on certain circumstances surrounding the conveyance. *Id.* at 1215. Those circumstances are: (1) A transfer made for inadequate or no consideration; (2) existing or contemplated indebtedness against the transferor; and (3) failure of the transferor to retain sufficient property to pay his indebtedness. *Id.*

Respondent argues that the evidence will show that the actual transfer of beneficial ownership and control of the property in question did not occur until 1989 when the property was sold, and Mr. and Mrs. Elias ceased occupying it. Respondent also alleges that the facts in this case involve actual fraudulent intent to utilize the transfer of the property to avoid paying taxes.

Respondent's arguments raise factual issues that cannot be determined from the undisputed facts. Because there are genuine issues of material fact as to whether petitioners are

---

[11] See *Burns v. Commissioner,* T.C. Memo. 1989-395. Other methods have been used to establish transferee liability under Illinois law. See, e.g., *Berliant v. Commissioner,* 729 F.2d 496, 501 n.9 (7th Cir. 1984), affg. *Magill v. Commissioner,* T.C. Memo. 1982-148.

[12] This section has since been repealed and replaced with the Uniform Fraudulent Transfer Act, Ill. Ann. Stat. ch. 59, pars. 101-112 (Smith-Hurd 1989), effective Jan. 1, 1990.

liable as transferees under Illinois law, petitioners' motion for summary judgment is denied.

*An appropriate order will be issued.*

