W. L. GORE & ASSOCIATES, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
W. L. Gore & Assocs. v. Commissioner
Docket No. 15476-93
United States Tax Court
T.C. Memo 1995-96; 1995 Tax Ct. Memo LEXIS 97; 69 T.C.M. (CCH) 2037; March 7, 1995, Filed *97 For petitioner: Robert E. Schlusser, Bryan E. Keenan, and John S. Campbell. For respondent: Richard H. Gannon. TANNENWALD
TANNENWALD
MEMORANDUM OPINION TANNENWALD, Judge: This case is before us on petitioner's motion for summary judgment under Rule 121. [1] Respondent determined the following deficiencies in petitioner's Federal income taxes based upon the allocation of royalty income to petitioner from Japan Gore-Tex, Inc. (JGT), pursuant to the provisions of section 482: Year
Deficiency
1984
$ 1,119,916
1985
1,063,834
1986
487,932
1987
1,394,566
1988
1,405,592
1989
1,371,478
1990
2,338,169
1991
187,309
On a motion for summary judgment, the moving party must show the absence of dispute as to any material fact and that a decision may be rendered as a matter of law. Rule 121(b); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); *98 Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994). The factual materials and the inferences to be drawn from them must be viewed in the light most favorable to the party opposing the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Elias v. Commissioner, 100 T.C. 510, 514 (1993); Naftel v. Commissioner, 85 T.C. 527, 529 (1985). However, the party opposing the motion cannot rest upon mere allegations or denials, but must set forth specific facts showing there is a genuine issue for trial. Rule 121(d); O'Neal v. Commissioner, 102 T.C. 666, 674 (1994). Ultimately, if there exists any reasonable doubt as to the facts at issue, the motion must be denied. O'Neal v. Commissioner, supra at 674; Sundstrand Corp. v. Commissioner, supra at 520. We will set forth a summary of facts relevant to our discussion which do not appear to be in dispute; they are stated solely for purposes *99 of deciding the motion and are not findings of fact for this case. Fed. R. Civ. P. 52(a); Sundstrand Corp. v. Commissioner, supra at 520. Background
Petitioner, W. L. Gore & Associates, Inc., is a Delaware corporation with its principal office in Newark, Delaware. It was founded in 1958 to manufacture electrical cables insulated with polytetrafluorethylene (PTFE). At all times, petitioner's stock has been owned by members of the Gore family, their friends and employees of the corporation, including since 1974 an employee stock ownership plan. By 1967, petitioner had manufacturing operations in Newark, Delaware, Flagstaff, Arizona, Germany, and Scotland and was looking for an entry into the Japanese market. In June 1969, petitioner purchased a 33-1/3 percent interest in a Japanese corporation, Junkosha Ltd. (Junkosha), and concurrently sold its technology and patent rights for use in Japan to Junkosha. Petitioner's interest was later reduced to 30 percent to provide stock bonuses to Junkosha employees. In 1969, petitioner discovered a new process for stretching PTFE that produced high strength, highly porous PTFE (ePTFE). In 1974, *100 petitioner and Junkosha formed JGT, each owning 50 percent, to manufacture and sell ePTFE products in Japan. About this time, petitioner and JGT entered into a license agreement permitting JGT to practice ePTFE technology in Japan, for which JGT would pay a royalty of 4 percent to petitioner. In 1976, petitioner informed Junkosha, it would no longer assess any royalty on JGT. In October 1982, Gore entered into an agreement with JGT whereby Gore granted the exclusive license to use the ePTFE technology in Japan on a royalty-free basis. JGT's rights to license the technology acquired from petitioner were severely circumscribed. The agreement also provided that, in case either petitioner or JGT improved or developed new ePTFE technology, each would promptly disclose such technology and grant a royalty-free license to use the technology to the other. [2] There were similar royalty-free licensing agreements between JGT and Junkosha and between petitioner and Junkosha. *101 No employee, officer, or director of Junkosha or JGT has ever been an officer, director, or employee of petitioner. Discussion
Section 482 provides in pertinent part: In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses. * * * [Emphasis added.] Section 1.482-1(a)(3), Income Tax Regs., provides: (3) The term "controlled" includes any kind of control, direct or indirect, whether legally enforceable, and however exercisable or exercised. It is the reality of the control which is decisive, not its form or the mode of its exercise. A presumption of control arises if income or deductions have been arbitrarily shifted.
*102 This Court has described the requisite control under section 482 as one of "actual, practical control rather than any particular percentage of stock ownership." B. Forman Co. v. Commissioner, 54 T.C. 912, 921 (1970), affd. in part and revd. in part 453 F.2d 1144 (2d Cir. 1972). "The language of section 482 is broad and sweeping, and its application depends on a finding of either ownership or control." Collins Electrical Co. v. Commissioner, 67 T.C. 911, 918-919 (1977); Ach v. Commissioner, 42 T.C. 114, 125 (1964), affd. 358 F.2d 342 (6th Cir. 1966). [3]
Thus, the question of control, *103 which is the focus of petitioner's motion, involves a factually intensive inquiry, Procacci v. Commissioner, 94 T.C. 397, 412 (1990), with attributes suggesting that a decision by summary judgment is inappropriate. [4] Petitioner's position rests upon its reading of a pretrial order, dated May 20, 1994, in which the parties were ordered to submit memoranda setting forth their positions as to issues of fact and law involved herein, the theories underlying the same and restricting the trial to those positions and theories. Petitioner asserts that, by virtue of these conditions, the facts as set forth in respondent's memorandum, which petitioner concedes for the purposes of its motion, reveal that the necessary common control of petitioner and JGT, required by section 482, did not exist. Respondent opposes the motion on the ground that a trial would reveal additional facts, beyond those not in dispute, which would support the three bases for her determination that petitioner controlled JGT, namely: (1) petitioner's ownership of 50 percent of the stock of JGT and its ownership of 30 percent of Junkosha which owns the other 50 percent of JGT; (2) petitioner's *104 managerial control of the use of ePTFE technology in Japan by JGT by virtue of the web of interlocking arrangements between petitioner, Junkosha, and JGT; and (3) the arbitrary shifting of income from petitioner to JGT resulting from the royalty-free transfer of ePTFE technology from petitioner to JGT pursuant to the October 1982 agreement. We deal first with petitioner's view of the impact of our May 20, 1994, order. Petitioner argues that respondent's memorandum, submitted in response to that order, fails to put into issue reconsideration of the position we took rejecting a "common objective" standard under section 482 in B. Forman Co. v. Commissioner, 54 T.C. 912 (1970), on which we were reversed by the Court of Appeals for the Second Circuit, 453 F.2d 1144 (2d Cir. 1972). Petitioner therefore asserts that respondent is precluded from arguing now, in opposition *105 to the motion for summary judgment, that petitioner's 50-percent ownership of JGT and what respondent claims was a "common objective" of petitioner and Junkosha are enough to satisfy the section 482 control requirement, irrespective of petitioner's 30-percent ownership of Junkosha. We are satisfied that respondent's memorandum is broad enough to cover the "common objective" issue applied in the context of equal ownership of JGT by petitioner and Junkosha [5] and consequently reconsideration of Forman does not constitute a new issue. *106 Nor are we persuaded that we should not take petitioner's 30-percent ownership of Junkosha into account because, as petitioner contends, the attribution rules do not apply for purposes of section 482. The fact of the matter is that, for purposes of determining common control, indirect ownership is an element which can properly be considered even if the usual standards for attribution of ownership, such as those found in section 318, are not met. See Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders, par. 13.20[3][a] at 13-27 (6th ed. 1994). Zuckman v. United States, 207 Ct. Cl. 712, 524 F.2d 729 (1975), cited by petitioner, did not construe section 482 and is therefore distinguishable. Petitioner also argues that respondent has not, in her memorandum submitted in response to our May 20, 1994, order, set forth sufficient facts in respect of any managerial control exercised by petitioner over JGT. No representatives of petitioner participated in the affairs of JGT as an officer, director, or employee of JGT. Here again, we think respondent's memorandum provides a sufficient basis for asserting managerial *107 control over JGT, beyond those narrow confines, when it asserts that such control was evidenced by the "agreements, arrangements and joint activities of Gore, Junkosha and JGT" augmented by specific factual allegations to support such assertion. We turn to the third prong of respondent's position that the arrangements between petitioner and JGT for cross-licensing of technology constitute an arbitrary shifting of income and creates a presumption of control under section 1.482-1(a)(3), Income Tax Regs. Petitioner claims that the sole basis for respondent's position is the royalty-free aspect of these arrangements and that this is insufficient to justify the conclusion of an arbitrary shifting of income. Petitioner's position might have some merit if this were the sole basis for respondent asserting control under section 482. Cf. Dallas Ceramic Co. v. United States, 598 F.2d 1382, 1389 (5th Cir. 1979). Such is not the case here. Moreover, we have difficulty understanding how the condition of arbitrary shifting of income can be satisfied short of evidence as to the details of the royalty-free arrangements including a comparison of the nature and value *108 of the exchanges of technology which were expected to take place among petitioner, JGT, and Junkosha. In this connection, we note that it does not follow that, because respondent does not attack the royalty-free arrangement between petitioner and Junkosha as not being at arm's length, the same conclusion must apply to the arrangements between petitioner and JGT. In view of the foregoing, we reject petitioner's attempt to parlay the alleged total inadequacy of the third prong of respondent's position coupled with petitioner's claims as to the similar inadequacy of the two other prongs of respondent's position into support for petitioner's assertion that the burden of proof in this case should be shifted to respondent. In this connection, petitioner overlooks the fact that the burden of proof in a section 482 case is to show that respondent's determination is arbitrary and capricious, a conclusion that the record thus far simply does not justify. A holding that a section 482 deficiency notice is arbitrary and capricious only destroys the presumption of correctness attaching to respondent's determination, with each party then being required to go forward with evidence as to what *109 the proper allocation should be; the taxpayer continues to have the burden of proving that its allocation is correct. Sundstrand Corp. v. Commissioner, 96 T.C. 226, 353-354 (1991). [6] As a consequence, the rule as to shifting the burden of going forward with the evidence, which sometimes occurs in a non-section 482 case, see, e.g., Anastasato v. Commissioner, 794 F.2d 884, 886-887 (3d Cir. 1986), vacating and remanding T.C. Memo. 1985-101; Dellacroce v. Commissioner, 83 T.C. 269, 280 (1984), is simply not applicable.
We have evaluated the scope of respondent's positions as reflected in the record herein in light of three basic considerations. First, we do not read our May 20, 1994, order as requiring respondent to cross every "t" and dot every "i" in her memorandum of issues of fact and law. The *110 objective of that order was to require that the position of each party be set forth sufficiently to provide the other party and the Court with an understandable and workable frame of reference for trial. This we think respondent has accomplished, and we suggest that petitioner keep our view in mind in dealing with evidentiary matters at trial. Secondly, respondent was not required, in opposing petitioner's motion for summary judgment, to set forth every arrow in her quiver of facts. All that respondent was required to do was to demonstrate that disputed issues of fact remain to be resolved, not how they should be resolved. This she has done. In the foregoing context, petitioner's concession of the facts set forth in respondent's memorandum has less than a determinative effect. Third, we reject petitioner's attempt to deal separately with each of the three prongs of respondent's position in respect of control of JGT by petitioner. The fact of the matter is that there is a confluence among the three prongs which can, depending upon the evidence at trial, produce a result which would not necessarily follow from their separate consideration. This may well be a situation where the *111 whole is more than the sum of its parts. Finally, the facts that JGT does not have a presence in the United States and that petitioner is asserting an absence of control over JGT give rise to problems in respect of the ability of respondent to obtain critical information through the discovery process and in respect of the resolution of evidentiary and burden of proof issues in the event of trial. Cf. Gerling International Insurance Co. v. Commissioner, 839 F.2d 131 (3d Cir. 1988), revg. and remanding 87 T.C. 679 (1986) (supplementing 86 T.C. 468 (1986)), and on remand 98 T.C. 640 (1992). [7] *112 Moreover, we note that discovery has not been completed and that this is a factor which can be taken into account, especially where the nonmoving party does not have the burden of proof and is the one seeking discovery. [8] Cf. Celotex Corp. v. Catrett, 477 U.S. at 322, 326; Wright & Miller, Federal Practice & Procedure, 192 (2d ed. 1983).
The long and short of the matter is that there are sufficient areas of potentially disputed facts to require a trial herein and that petitioner's motion for summary judgment should be denied. Given this posture, we find it unnecessary to resolve the difference between this Court and the Court of Appeals for the Second Circuit as to the role of a "common objective" standard in applying section 482. See B. Forman Co. v. Commissioner, supra. Clearly, both this Court and the Court of Appeals left open the possibility that factors other than the percentage of direct stock ownership could be taken into account in determining the section 482 control issue. See B. Forman Co. v. Commissioner, 453 F.2d at 1153 ("In order to find control, no percentage requirements are specified nor are any precise requirements *113 necessary. The trend in the recent case law is to apply the realistic approach."); B. Forman Co. v. Commissioner, 54 T.C. at 921 (sec. 482 "means actual, practical control rather than any particular percentage of stock ownership."). However, the parties should keep in mind that, in the final analysis, petitioner may, after trial, succeed in its contention that the only support for respondent's position herein is to be found in a common objective of petitioner and Junkosha as equal owners of JGT in respect of that entity's activities. Cf. Dayton Hudson Corp. v. Commissioner, 101 T.C. 462, 468-469 (1993). In such event, we would presumably have to determine whether we would follow our decision or that of the Court of Appeals in B. Forman Co. v. Commissioner, supra.[9]
*114 One final word. We glean from what is already a voluminous record that the parties are convinced of the correctness of their positions and can be expected to exhibit "an overzealous effort, during the course of the ensuing litigation, to infuse a talismanic precision into an issue which should frankly be recognized as inherently imprecise and capable of resolution only by a Solomon-like pronouncement". Messing v. Commissioner, 48 T.C. 502, 512 (1967). Given the vagaries of the trial and of its outcome which are reflected by our analysis herein, it would seem to the Court that a determined effort to settle this case would be the better part of valor. In accordance with the foregoing, petitioner's motion for summary judgment will be denied. An appropriate order will be issued. Footnotes
1. All statutory references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The right of petitioner to use such technology in the United States, and in countries in which petitioner had a wholly owned subsidiary on the date of the agreement, was to be exclusive and on terms and conditions to be agreed upon. The agreement did not state specifically whether such right was to be royalty free as did the provision granting petitioner the nonexclusive right to use such technology elsewhere.↩
3. See also Sunshine Department Stores, Inc. v. Commissioner, T.C. Memo. 1981-586, affd. without published opinion 705 F.2d 470 (11th Cir. 1983); Cayuga Service, Inc. v. Commissioner, T.C. Memo. 1975-4↩.
4. See Estate of Lauder v. Commissioner, T.C. Memo. 1990-530↩.
5. Respondent's memorandum states: c. The "same interests" mentioned in section 482(a) do not have to be identical persons. Two different corporations' (e.g., Gore and Junkosha) same interests in a third corporation (e.g., JGI) can establish control. Gore alone does not have to own a majority interest in JGI to control JGI. Common ownership may be established by direct or indirect ownership, and when two or more corporations are not wholly-owned by the same interests, courts often look for additional indicia of control. Common ownership and profit motive may establish control. There are additional indicia here. [Citations omitted.] ↩
6. See also Perkin-Elmer Corp. v. Commissioner, T.C. Memo. 1993-414↩.
7. We note that an appeal of a decision in this case would lie to the Court of Appeals for the Third Circuit. See Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985↩ (10th Cir. 1971).
8. On Oct. 26, 1994, respondent filed motions to compel production of documents and answers to interrogatories. By order, dated Nov. 22, 1994, the Court deferred action on these motions until after it disposed of petitioner's motion for summary judgment.↩
9. Since an appeal in this case lies to the Court of Appeals for the Third Circuit, we are not required to follow the reversal of B. Forman Co. v. Commissioner, 54 T.C. 912 (1970), revd. 453 F.2d 1144 (2d Cir. 1972), by the Court of Appeals for the Second Circuit. Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985↩ (10th Cir. 1971).